IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA

VERSUS                                            CRIMINAL NO: 1:21-cr-00033-TBM-BWR

STEVENSON CHAMORR BORRERO

### SENTENCING BRIEF

The Defendant pleaded guilty to Count 1 of the indictment- Possession with Intent to Distribute 500 grams or more of Methamphetamine. After testing the Methamphetamine it was determined to be 970.6 grams of methamphetamine hydrochloride with a purity of 97% which results in 941.4 grams of actual methamphetamine as well as another 2.91 kilograms of actual methamphetamine. It is this "purity enhancement" that the Defendant seeks redress from as noted herein.

Base offense levels for federal drug crimes are typically based on the type and quantity of drugs involved. Base offense levels for methamphetamine, however, are driven in large part by purity. For sentencing purposes, a given quantity of pure methamphetamine is treated the same as ten times that amount of a "mixture and substance" containing meth. The origins of the purity distinction and the 10-to-1 ratio can be traced to the 1988 Anti-Drug Abuse Act, in which the weight quantity of methamphetamine mixture triggering each mandatory minimum was set at ten times the quantity of the pure methamphetamine triggering that same statutory minimum penalty. See United States Sentencing Commission, Methamphetamine: Final Report, at 7 (Nov. 1999).[1] The Commission followed suit by amending the Guidelines to reflect the 10-to-1

---

[1] See United States Sentencing Commission, Methamphetamine: Final Report, at 7 (Nov. 1999), available at https://www.ussc.gov/sites/default/files/pdf/research/working-group-reports/drugs/199911_Meth_Report.pdf.

mixture/pure substance ratio. *Id.* While higher-purity drugs may indeed be more dangerous and warrant more significant sentences, part of the justification for the disparity in treatment under the guidelines rested on reasoning that higher-purity methamphetamine reflects a higher level of culpability and closer access to the source of the drugs. *United States v. Haynes*, 2022 WL 1096858, at 2 (S.D.W.Va. 2022).

The Sentencing Commission considered drug purity to be relevant because, in its estimation, "possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs." U.S.S.G. 2D1.1 cmt. 9. This is problematic for two reasons. First, testing methamphetamine for purity is not common practice in all federal judicial districts. As such, defendants in districts where testing is common receive exponentially higher sentences than defendants convicted of the same conduct in non-testing districts. Second, purity levels are not a reliable indicator of a defendant's culpability or place in the chain of distribution.

The guidelines for methamphetamine were developed at a time when most methamphetamine in the United States was made by local "cooks" using household chemicals and pseudoephedrine from cold tablets. The yield was low purity and low quality. Today's methamphetamine, by contrast, is incredibly pure at all levels of the drug distribution process. In 2019, DEA seized 53,079 kilograms of methamphetamine nationwide. The average purity of the seizures exceeded 97%.[2] As such, the reasoning that the possession of pure narcotics is indicative of a prominent role in the enterprise and proximity to the source of the drugs does not hold true. Moreover, a defendant's role in the offense can be addressed through adjustments for

---

[2] 2020 DEA National Drug Threat Assessment, March 2021, pp.19-20, available at https://www.dea.gov/sites/default/files/2021-02/DIR-008-21%202020%20National%20 Drug%20Threat%20Assessment_WEB.pdf.

leaders, organizers, managers, and supervisors of criminal enterprises. See U.S.S.G. 3B1.1, Aggravating Role.

The 10:1 ratio for actual methamphetamine is not supported by empirical data or past sentencing practices. Indeed, in *United States vs. Nawanna*, 321 F.Supp. 3d 943 (N.D. Iowa 2018), the United States conceded the lack of empirical basis for the current methamphetamine guidelines, and numerous courts have so found. See *United States v. Hartle*, No. 4:16-CV-233-BLW, 2017 WL 2608221, at *2 (D. Idaho June 15, 2017) ("I have tried to determine whether there is any empirical data from the Sentencing Commission or in the academic literature which would justify the ratio. I have found none."); *United States v. Johnson*, 379 F. Supp. 3d 1213, 1223-24 (M.D. Ala. 2019) ("[J]ust as courts have criticized the link between drug quantity and the offender's role, they have also debunked the Guidelines' assumed connection between drug purity and criminal role.") (emphasis in original); id. at 1226 ("In sum, this court joins other district courts in rejecting the methamphetamine guidelines' 10-to-1 ratio because it is 'based on a flawed assumption that methamphetamine purity is a proxy for role in the offense.'") (quoting *Nawanna*, 321 F. Supp. 3d at 955); *United States v. Carrillo*, 440 F. Supp. 3d 1148, 1157 (E.D. Cal. 2020) ("For the reasons stated above, the court declares a policy disagreement with the methamphetamine Guidelines."); *United States v. Hayes*, 948 F. Supp. 2d 1009, 1031 (N.D. Iowa 2013); *United States v. Diaz*, No. 11-CR-821-2(JG), 2013 WL 322243, at *16 (E.D.N.Y. Jan. 28, 2013); *United States v. Ibarra-Sandoval*, 265 F. Supp. 3d 1249, 1255 (D.N.M. 2017) (finding that the Sentencing Commission's "assumption regarding the connection between methamphetamine purity and criminal role is divorced from reality."); *United States v. Cabrera*, 567 F. Supp. 2d 271, 271 (D. Mass. 2008) (explaining that this Guideline establishes a "false uniformity" by allowing quantity of drugs to mask all other factors).

The methamphetamine guidelines are further divorced from reality in that they include a two-level enhancement based on the finding that the offense involved the importation of methamphetamine. Troyer has never participated in the importation of methamphetamine. At least in this district, the enhancement applies regardless. Nearly all methamphetamine seized in the United States today originated in Mexico. When every dealer from the west coast to the east coast is serving up the same Mexican product, its origin is not probative of culpability.

The Need to Avoid Unwarranted Sentencing Disparity

Section 3553(a)(6) directs sentencing judges to "consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." To this end, "district courts must take account of sentencing practices in other courts to avoid disparities." *Kimbrough v. United States*, 552 U.S. 85, 108 (2007). The guidelines for methamphetamine (actual) are not informed by or reflective of past or current sentencing practice. In fiscal year 2021, less than one in four methamphetamine defendants received a guideline sentence – 23.8% were sentenced within their guideline range, while 34% received downward variances, 22.2% received substantial assistance departures, 14.3% participated in an early disposition program, and 5.1% received some other downward departure. Quick Facts, Methamphetamine Trafficking Offenses, United States Sentencing Commission, FY2021. When less than a quarter of methamphetamine defendants receive a guideline sentence, application of the guidelines does not promote consistency in sentencing, it promotes disparity.

In a recent case from this district involving 214.4 grams of methamphetamine with a purity between 96% and 97% percent, the court declined to use the base offense level for actual

methamphetamine, and instead used the offense levels for methamphetamine mixture. In so doing, the court stated:

> The Guidelines use drug purity as a proxy for culpability. But national experience suggests that is no longer true for methamphetamine. The DEA data show that most methamphetamine confiscated today is "pure" regardless of whether the defendant is a kingpin or a low-level addict. Given the on-the-ground reality in methamphetamine cases, the better way to determine culpability is to examine all of the circumstances of the defendant's case and life – seeing the defendant as a "whole person," as the Supreme Court just instructed in *Concepcion*. There are sentencing enhancements available for leaders, organizers, or managers of criminal enterprises. If the defendant's case warrants, those enhancements should be applied.   In the context of methamphetamine, though, purity is no longer probative of the defendant's culpability.

*United States v. Robinson*, 2022 WL 17904534, at *3 (S.D.Miss. 2022) (Citations omitted.) Using the base offense levels for methamphetamine mixture in this case would result in a base offense level of 32 (as opposed to a 38) and a guideline range of months 151 to 188 months absent the contested enhancements.

Unwarranted sentencing disparity also results from the inconsistent application of the methamphetamine importation enhancement.   As noted previously, the average purity of current methamphetamine seizures exceeds 97%.  It is widely accepted that most methamphetamine seized in the United States today originated in Mexico.  Despite this fact, the importation enhancement is applied only 9% of methamphetamine cases nationwide.[3]

Defendant Borrero-Chamorr is requesting the same treatment in the case at bar.

---

[3] In fiscal year 2021, there were 8,494 cases where methamphetamine was the primary drug type.   Quick Facts, Methamphetamine Trafficking Offenses, United States Sentencing Commission, FY2021.   The importation enhancement was applied in only 769 cases.   United States Sentencing Commission, Use of Guidelines and Specific Offense Characteristics, available at

RESPECTFULLY SUBMITTED, this the 3rd day of July, 2023.

BY: HORNSBY WATTS, PLLC

BY: */s/ W. Fred Hornsby, III*
W. FRED HORNSBY, III (MSB #100712)

PREPARED BY:

W. FRED HORNSBY, III
ATTORNEY FOR DEFENDANT
HORNSBY WATTS, PLLC
1025 HOWARD AVENUE
BILOXI, MS 39530
TELEPHONE: (228) 207-2990
FACSIMILE: (866) 271-4393
wfh@hornsbywatts.com

---

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2021/Ch2_Guideline_Based.pdf.

## **CERTIFICATE OF SERVICE**

      I, W. Fred Hornsby, III, do hereby certify that I have this date filed with the ECF system the above and foregoing document which sent notice and an electronic copy to all counsel of record who have registered with the ECF System.

      This the 3rd day of July, 2023.

                                                */s/ W. Fred Hornsby, III*
                                                W. FRED HORNSBY, III (MSB #100712)

HORNSBY WATTS, PLLC
1025 HOWARD AVENUE
BILOXI, MS 39530
TELEPHONE: (228) 207-2990
FACSIMILE: (866) 271-4393
wfh@hornsbywatts.com